SMITH, Appellant, v. JONES COUNTY STATE BANK, Respondent.

(208 N. W. 590.)

(File No. 6063. Opinion filed April 22, 1926.) .

1. **Principal and Agent—Banks and Bankings—Depositor's Statement that He Would Hold Bank Liable for Checks Paid Out of His Account Drawn by Another Without Offering to Return Checks, Held Not a Definite Repudiation of Drawer's Authority to Sign Checks.**

Statement by depositor to bank cashier that he would hold bank liable for amount of checks drawn by another on his account, without offering to return checks to bank, held not a definite repudiation of drawer's authority to sign checks.

2. **Principal and Agent—Bank, Prejudiced by Depositor's Delay in Repudiating Checks Drawn by Another on Depositor's Account, Cannot Be Held Liable for Amount of Checks.**

Depositor, knowing of checks drawn by another on his account, but not repudiating latter's authority to sign checks, or returning checks to bank at time when drawer had sufficient money in own account to cover them, thereby prejudicing bank by delay, cannot recover amount of checks from bank.

---

Note.—See, Headnote (1), American Key-Numbered Digest, Principal and agent, Key-No. 161(4), 2 C. J. Sec. 166 (Anno.); (2) Principal and agent, Key-No. 170(3), 2 C. J. Sec. 127.

Appeal from Circuit Court, Jones County; Hon. N. D. Burch, Judge.

Action by E. J. Smith against the Jones County State Bank.

From a judgment on a directed verdict for defendant, and an order denying a new trial, plaintiff appeals.   Affirmed.

*Bangs & Wood* and *Turner M. Rudesill,* all of Rapid City, and *F. J. Carpenter,* of Murdo, for Appellant.

*M. L. Parish,* of Murdo, and *Brown & Brown,* of Chamberlain, for Respondent.

GATES, P. J.   This is an appeal by plaintiff from an order denying new trial and from a judgment entered upon a directed verdict in favor of defendant bank.

The action was brought to recover from the defendant bank the sum of $1,828.65, which plaintiff claims was due him on his deposit account in said bank.   The said total is the aggregate amount of four checks paid by the bank out of the plaintiff's account drawn by one Nick Hurst.

From the year 1917 to about the end of the year 1923 the plaintiff kept a checking account in, and did business with, the defendant bank.   For more than a dozen years prior to 1918 the plaintiff had been an intimate associate of Nick Hurst, and the two had often done business together, and carried on the business of running cattle together.   So far as is disclosed by the record, they had not conducted such enterprises as partners, but rather as associates, each owning his own cattle, but running them in common on land which they had jointly leased.   During the years 1917, 1918 and 1919 Smith lived with Hurst, except during periods when he would be absent on the Pine Ridge Reservation. Prior to August, 1918, Hurst had been authorized by plaintiff to write checks against Smith's account in defendant bank, and Smith had recognized and acquiesced in those checks being paid out of his account.   Those particualr checks were drawn and paid during the months of June, July, and August, 1917.   Some of them were signed, "E. J. Smith, by Nick Hurst," one "E. J. Smith, by Nick," and one simply "Nick Hurst," with a notation in the left-hand corner apparently indicating that it should be paid out of E. J. Smith's account.

No question arises in this case about those checks, but the following four checks are those aggregating $1,828.65, and which plaintiff testified were wholly unauthorized:   On August 27, 1918, Hurst drew a check on defendant bank to the order of A. T. Wilson, signed simply with his own name, for $467.65, in pay-

ment of taxes. On September 7, 1918, he drew another check on defendant bank, signed simply "Nick Hurst," in payment for cattle which Hurst had bought at a sale in the neighborhood. This check was for $601, and was payable to the order of Murdo State Bank, which clerked the sale. On September 11, 1918, Hurst drew another check on defendant bank, signed "E. J. Smith, by Nick Hurst," to the order of Guthrie & Williams, for $600 in payment for a tractor which he bought from them. On September 17, 1918, he drew another check on defendant bank, signed "E. J. Smith, by Nick Hurst," to the order of the Livestock Bank of Draper for $160. Hurst could not recall what this check was given for. He informed the bank that the two checks for $467.65 and $601, signed with his name alone, were to be charged against the account of the plaintiff, and all four checks were charged against Smith's account with the defendant bank.

Upon his examination plaintiff admitted he had authorized Hurst to sign a $160 check, and, as the above-described check for that amount is the only check for that amount in his bank account, it must be considered as authorized. On or about September 30, 1918, the bank sent plaintiff a statement of his account, and returned to him the canceled checks, including the above four. Plaintiff testified that he did not learn of these charges against his account until his return from Pine Ridge to Murdo in the month of December, 1918, at which time he says he first saw the statement and canceled vouchers, and he claims that within a few days after this he went to the bank and asked the cashier how he came to let Nick Hurst check on him to the amount of $1,800. He said that the cashier responded, "Why isn't that all right," and that he replied, "No, it isn't all right, the Sioux City Bank has got all the security on his cattle, and you have got the security on the rest of the stuff, and there is no security for me;" that the cashier said, "Nick will pay you all right," and plaintiff responded, "Well maybe he will and maybe he won't, but I am holding you responsible in the meantime for that amount of money." This was the only dissent he ever made to the charging of these four checks out of his account, although he continued to do business with the bank, receive his statements of account and canceled checks for a period of at least five years thereafter, all of which statements showed his account diminished

by the amount of those four checks aggregating $1,828.65.    On
June 19, 1924, he drew a check on the defendant bank for
$1,828.65, the amount of the four checks.    Six months prior to this
time his account with the bank had been closed, and payment of
the check was refused.    On cross-examination plaintiff also ad-
mitted that Hurst told him in August or September, 1918, that
he had checked on plaintiff for $601 for cattle, and the record
does not disclose that Smith objected thereto at that time.    The
evidence also shows without dispute that, after his alleged demand
upon the bank, and prior to the beginning of this action, plaintiff
frequently sought to collect the amount of these checks from
Hurst, and that plaintiff never returned or offered to return said
checks to the bank. .

This action was begun July 31, 1924, nearly six years after
the drawing of said four checks.

The checks in question were not forged checks nor altered
checks nor raised checks.    They were valid instruments to bind
Hurst, if they were not binding upon plaintiff.    The undisputed
testimony of the cashier shows that Hurst had in his own account
at the bank, after the time of the plaintiff's alleged conversation
with the cashier in December, 1918, and before the bringing of
this action, sufficient money to have paid those four checks had
plaintiff repudiated them and returned them to the bank at that
time, and that the bank was prejudiced by Smith's failure to re-
pudiate them.

[1, 2]    The alleged conversation by Smith in December, 1918,
while at the same time he kept the checks, was not definite repu-
diation of Hurst's authority to sign checks.    And plaintiff never
did definitely repudiate it until he drew the check for $1,828.65
on June 19, 1924, at which time the bank had been prejudiced by
such delay.

We think the trial court did not err in directing a verdict
for defendant upon this ground alone, even putting to one side
the question whether the demand might have been a valid one,
if it had not included the check of $160, which plaintiff had au-
thorized, and the check for $601, to which he did not object when
informed in regard thereto by Hurst.

The judgment and order appealed from are affirmed.

MISER, Circuit Judge, not sitting.